IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:10-CV-5062-DGK |
| | ) | |
| RONALD R. BRICE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING SUMMARY JUDGMENT

This is a civil case concerning unpaid federal taxes. Plaintiff, the United States of America, alleges that Defendants failed to pay any federal income taxes for tax years 2001, 2002, and 2003. Now before the Court is Plaintiff's Motion for Summary Judgment (doc. 22). Plaintiff seeks to reduce to judgment certain federal income tax assessments made against Defendant Ronald R. Brice ("Brice") and to foreclose federal tax liens on a house and an airplane hangar in which Brice has an interest. Brice acknowledges that he failed to file timely tax returns for these years, but contends the exact amount due is genuinely in dispute.

The Court finds there is no genuine issue of material fact that Ronald Brice has unpaid tax liabilities of $1,764,607.14, plus statutory accruals after August 23, 2010. The Court holds that the tax liens against Brice's residence and airplane hangar are valid; that the nominal owner of these properties, Investment Trail Trust, is Brice's alter ego or nominee; and that the United States has the right to foreclose on these liens. Judgment is hereby entered in the amount of $1,764,607.14, plus statutory accruals after August 23, 2010. The Court orders that the residence and airplane hangar be sold with the proceeds going to (1) the costs of sale; (2) the Stone County

Treasurer for any unpaid local property taxes; and (3) the United States, in satisfaction of its tax liens.

## Summary Judgment Standard

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party, and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991) (citation omitted). To establish a genuine issue of fact sufficient to warrant trial, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must set forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 248. But the nonmoving party "cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citation omitted).

## Facts

At the outset, the Court notes the facts as found in this order are drawn heavily from Plaintiff's proposed "Statement of Uncontroverted Facts" for three reasons. First, under Local Rule 56.1(a), Defendants admitted Plaintiff's proposed facts by failing to include in their

response "a concise listing of material facts as to which the party contends a genuine issue exists," and failing to set forth each fact in dispute in a separate paragraph, referring "specifically to those portions of the record upon which" it relies.  Second, Defendants admitted many of these facts during discovery when they failed to timely respond to Plaintiff's request for admissions. *Quasius v. Schwan Food Company*, 596 F.3d 947, 950 (8th Cir. 2010) (finding that by operation of Rule 36(a) the requested matter is deemed admitted).  When such a fact is admitted, the matter is "conclusively established" and binding on the party.  *Id.*  If the admitted facts are dispositive of the case, "then it is proper for the district court to grant summary judgment."  *Id.*  Third, although Defendant Brice contends he has demonstrated a genuine issue of material fact that needs to be resolved at trial by attaching to his response 113 pages of unindexed, unnumbered documents, he has not.   This mish-mash of unsigned correspondence, unsigned tax returns, and purported emails, none of which have been authenticated or were produced during discovery, do not demonstrate that there is any triable issue here.

Thus, the Court finds the facts to be as follows.  In tax year 2001, Brice earned interest income, Social Security income, and made withdrawals from his Individual Retirement Accounts.  Brice's income in tax year 2001 was at least $575,757.  In tax year 2002, Brice earned income of at least $593,433 from multiple retirement account distributions, Social Security income, interest income, and other sources.  In tax year 2003 Brice's income was at least $1,263,827.

Because Brice did not file income tax returns, the IRS conducted an examination of Brice's 2001, 2002, and 2003 tax years, and made assessments for those years.  The assessments were based on information received from third parties, such as financial institutions and the Social Security Administration, which submitted to the IRS Forms 1098, Forms 1099, Forms

3

5498, and other statements reporting interest paid, interest earned, retirement and IRA distributions, and Social Security distributions.

On the following dates, a delegate of the Secretary of the Treasury properly and timely made assessments against Brice for federal income taxes, penalties, and interest for the tax years 2001 through 2003. The assessments and accruals are summarized as follows:

| Year | Assessment Dates | Assessed Tax | Accrued and Assessed Interest | Accrued and Assessed Penalties | Outstanding Amount Due as of 8/23/2010 |
|---|---|---|---|---|---|
| 2001 | 5/17/2004 | $209,657.00 | $163,827.30 | $75,585.71 | $449,070.88 |
| 2002 | 11/15/2004 | $201,133.64 | $139,918.65 | $102,259.76 | $443,312.05 |
| 2003 | 10/24/2005 | $427,522.95 | $257,059.90 | $214,121.26 | $872,224.21 |
| Total | | | | | $1,764,607.14 |

As shown above, Brice owes the United States $1,764,607.14, plus interest and additions accruing after August 23, 2010.

As a result of Brice's failure to satisfy these assessments, federal tax liens arose as of the assessment dates and attached to all property and rights to property then owned or thereafter acquired by Brice, including the property described below. The United States filed a notice of federal tax lien against Brice with the Stone County, Missouri, Recorder ("the Recorder") on November 9, 2005 (for tax years 2001 and 2002), and April 26, 2006 (tax year 2003).

The two properties on which the United States now seeks to foreclose its federal tax liens are located in Stone County, Missouri, and are described as follows:

1.   All that part of the Northeast Quarter (NE 1/4) of the Southwest Quarter (SW 1/4) of Section Five (5), Township Twenty-Two (22) North, Range Twenty-Three (23) West,

4

Lying North of the County Road (Lake Road 13-35), and all that part of the Southeast Quarter (SE 1/4) of the Southwest Quarter (SW 1/4) of Section Five (5), Township Twenty-Two (22) North, Range Twenty-Three (23), Lying North of the County Road (Lake Road 13-35), Except any part Deeded, taken or used for street, Road or Highway purposes, all in Stone County, Missouri. ("The Residence.")

2. All of lot Eleven (11), Block One (1), Kimberling Airways Subdivision, according to the recorded plat thereof, in Book 5, Page 66, Stone County Recorder's office, Stone County, Missouri. ("The Airplane Hangar.")

Brice and his wife, defendant Marlene P. Brice, acquired the Residence by warranty deed in October 1997. On or about June 13, 2000, the Brices conveyed the Residence to themselves as trustees of the Brice Family Trust, RMB-ONE, dated February 17, 1992 as amended, by quit claim deed, which was properly recorded on June 26, 2000. On January 24, 2001, Ronald Brice and Marlene Brice, as trustees of the Brice Family Trust, RMB-ONE dated February 17, 1992, then conveyed the Residence back to themselves by Special Trustee's Warranty Deed, on January 29, 2001. On December 9, 2004, the Brices conveyed the Residence by quit claim deed to Investment Trail Trust, signing the conveyance papers on behalf of both the purported buyer and seller. The sales contract between the Brices and Investment Trail Trust was recorded on December 20, 2004.

The conveyance of the Residence was made after Brice's 2001 and 2002 taxes were assessed on May 17 and November 15, 2004, respectively, and thus was subject to the federal tax liens related to those liabilities. Defendant's wife, Marlene Brice, continues to live at the Residence.

Ronald Brice and Marlene Brice as Trustees for the Brice Family Trust acquired the Airplane Hangar in September 1997 and recorded a quit claim deed on January 20, 1998. On or about December 8, 2004, the Brices, as Trustees for the Brice Family Inter Vivos Trust, Trust No. RMB-ONE, conveyed the Airplane Hangar to Investment Trail Trust by quit claim deed,

5

Case 3:10-cv-05062-DGK   Document 40   Filed 03/30/12   Page 5 of 11

which was properly recorded on December 20, 2004. The Brices signed the conveyance papers on behalf of both the purported buyer and seller.

Brice formed Investment Trail Trust in the State of Washington on or about October 23, 2003. Brice was the trustee and "confirmed governing people" for the trust. He was also its Chairman. When Brice formed Investment Trail Trust in October 2003, his federal tax liabilities for the years 2001 and 2002 were unpaid and overdue.

Investment Trail Trust did not give any consideration for the transfers of the Residence and the Airplane Hangar. Brice's transfer of the Residence and the Airplane Hangar to Investment Trail Trust also left him insolvent.

Brice formed Missouri Fast Track Trust in Washington state on or about October 22, 2003. Brice is a trustee and Chairman for that trust. Brice formed Missouri Fast Track when his 2001 and 2002 tax liabilities were overdue and unpaid and after the IRS had notified him that it had not received his income tax returns. In January 2004, Brice established a checking account for Missouri Fast Track. Brice controls the account and pays his personal living expenses out of the account.

On or about May 3, 2007, Ronald Brice as Trustee of Investment Trail Trust executed an alleged mortgage in the amount of $1,822,500 in favor of Missouri Fast Track Trust, which was filed with the Recorder of Deeds for Stone County, Missouri, on May 4, 2007. The Residence was purportedly meant to secure this mortgage.

Also on May 3, 2007, Ronald Brice as Trustee of Investment Trail Trust, executed an alleged mortgage in favor of Missouri Fast Track Trust in the amount of $822,500, which was filed with the Recorder of Deeds for Stone County, Missouri, on May 4, 2007. The Airplane Hangar was purportedly meant to secure this mortgage.

On September 25, 2008, a notice of federal tax lien against Investment Trail Trust, as nominee of Ronald Brice, was properly recorded.

## Discussion

### I. Judgment is entered against Ronald Brice for $1,764.607.14.

The tax assessments made against Ronald Brice for tax years 2001, 2002, and 2003 are evidenced by certified IRS transcripts of account which were attached as exhibits to the pending motion. An IRS assessment is presumptively correct evidence of a taxpayer's liability and can satisfy the United States' burden of proof. *United States v. Fior D' Italia, Inc.*, 536 U.S. 238, 242-43 (2002); *Guthrie v. Sawyer*, 970 F.2d 733, 737 (10th Cir. 1992) (holding the United States need only submit certified transcripts of account to demonstrate the validity of an assessment). It is well-established that "the Commissioner's determination of tax liability is entitled to a presumption of correctness" and "the burden is on the taxpayer to prove that the determination is erroneous." *Boles Trucking, Inc. v. United States*, 77 F.3d 236, 239 (8th Cir. 1996). The penalties assessed against a taxpayer for failure to timely file his tax returns and pay his federal income taxes are also entitled to a presumption of validity. *Id.* at 242. In litigation involving a valid assessment of federal taxes, the taxpayer must prove that the assessment was erroneous. *Fid. Bank, N.A., v. United States*, 616 F.2d 1181, 1186 (10th Cir. 1980).

Given the record, the Court finds there is no genuine issue of material fact remaining for trial with respect to Brice's tax liabilities. Judgment is hereby entered in favor of the United States in the amount of $1,764,607.14, plus statutory accruals after August 23, 2010.

7

## II. The United States is entitled to foreclose on the tax liens on the Residence and the Airplane Hanger.

The lien provisions of the Internal Revenue Code are intended to ensure prompt and certain enforcement of the tax laws. *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 721 (1985). Under sections 6321 and 6322 of the Internal Revenue Code, "a tax lien in favor of the United States attaches to all properties and rights to property of a delinquent tax payer from the date the tax liability is assessed" and "continues until the tax liability is fully satisfied or becomes unenforceable due to lapse of time." *Dean v. United States*, 987 F. Supp. 1160, 1163-64 (W.D. Mo. 1997). Such a lien is exceptionally broad, reaching every interest in property belonging to the taxpayer. *Nat'l Bank of Commerce,* 472 U.S. at 719-20.

A section 6321 lien extends beyond the taxpayer and reaches property in the hands of the taxpayer's alter ego or nominee. *See G.M. Leasing Corp. v. United States,* 429 U.S. 338, 350-51 (1977). Thus, federal tax liens against a taxpayer may be foreclosed against property, even when the taxpayer is no longer the nominal property holder; for example, when title is held by a nominee or alter ego, or where the title has been fraudulently conveyed. In such instances, courts have ignored the fact that the property is in a third party's name and have upheld the IRS's right to pursue such property. *See, e.g., G.M. Leasing*, 429 U.S. at 350-51; *United States v. Scherping,* 187 F.3d 796, 801 (8th Cir. 1999).

While state law determines the nature and extent of a taxpayer's interests in property, *Aquilino v. United States,* 363 U.S. 509, 513 (1960), federal law controls whether a state-law right constitutes property or rights to property to which the federal lien may attach. *Nat'l Bank of Commerce,* 472 U.S. at 727. Thus, where a federal tax lien is involved, if an entity is determined to be a delinquent taxpayer's alter ego, the entity's assets can be reached to satisfy

8

the taxpayer's personal tax liabilities to the extent the federal tax liens are prior to those of competing creditors. *See, e.g., G.M. Leasing*, 429 U.S. at 350-51 (approving IRS levy of corporate property to satisfy personal tax liability); *Loving Saviour Church v. United* States, 728 F.2d 1085, 1086 (8th Cir. 1984).

In the present case, federal tax liens arose against Brice on May 17 and November 15, 2004, and October 24, 2005, the dates when the IRS made assessments against him for his 2001, 2002, and 2003 taxes respectively. Because the liens arose against Brice, the liens also attached to Brice's interest in the Residence and the Airplane Hangar on those dates.

The Court holds Brice is the true owner of the Residence and the Airplane Hangar; Investment Trail Trust simply holds the properties as his nominee. A nominee is "one who holds bare legal title to property for the benefit of another. . . [u]nder Missouri law, one who holds such title has no actual interest in the property, which remains with the beneficial owner." *Scoville v. United States*, 250 F.3d 1198, 1202 (8th Cir. 2001) (holding that plaintiff was taxpayer's nominee where the taxpayer continued to "make use of the farm," "treat it as his own," and had "structured all his dealings so as to protect his assets from taxation"). By purporting to convey to the properties to Investment Trail Trust, Brice conveyed the properties to an entity that he controls. No other person is involved with Investment Trail Trust, and until his recent passing, Brice continued to reside at the Residence and utilize the Airplane Hangar. Investment Trail Trust served only as a nominal title holder on behalf of Brice, its founder, Chairman, and "confirmed governing people."

The Court also holds that conveyance of the properties to Investment Trail Trust was a sham. To determine if conveyance of property is legally meaningless, Missouri law looks for evidence of the following "badges of fraud:" (1) whether the conveyance is to a near relative;

9

(2) inadequacy of consideration; (3) if the transaction is different from the usual method of transacting business; (4) whether the transfer appears in anticipation of suit or execution; (5) retention of possession by the transferor; (6) the transfer of all or nearly all of the transferor's property; (7) insolvency caused by the transfer; and (8) the failure to produce rebutting evidence when circumstances surrounding transfer are suspicious. *First Home Sav. Bank v. C & L Farms, Inc.*, 974 S.W.2d 621, 626 (Mo. Ct. App. 1998). A concurrence of several of the badges raises a presumption of fraud. *Id.* In the present case, no consideration was given for the purported transfers and they left Brice insolvent. The transfers were also made in anticipation of the United States' collection efforts: the conveyances occurred only after Brice's federal taxes had been assessed and were unpaid and after the IRS had notified Brice of the overdue taxes. Finally, there is no evidence on the record rebutting the United States' evidence. The entire record suggests that Brice formed Investment Trail Trust and conveyed the properties to it for the sole purpose of hindering IRS collection efforts.

Consequently, Brice's purported transfer of these properties to Investment Trail Trust in December 2004 changed nothing; the transfer was made subject to the liens (related to the 2001 and 2002 taxes), and the liens remain attached to the properties. Although Brice is no longer the nominal owner of the properties, he still has an ownership interest in them to which the federal tax liens have attached and upon which the United States may foreclose to satisfy the liens.

Finally, the Court holds the mortgages filed in favor of Missouri Fast Track do not take priority over the federal tax liens. The mortgages were filed after the tax assessments were made and after notices of federal tax lien were filed with the county recorder, thus the federal tax liens have priority.

In light of the above, the Court holds Brice has an ownership interest in both the Residence and the Airplane Hangar, and that the federal tax liens attach to that interest and should be foreclosed.

## CONCLUSION

There is no genuine issue of material fact that Ronald Brice has unpaid tax liabilities of $1,764,607.14, plus statutory accruals after August 23, 2010 for the 2001-2003 tax years. The record establishes that Investment Trail Trust holds the subject property (the Residence and the Airplane Hangar) as Brice's nominee, and that Brice established Investment Trail Trust and Missouri Fast Track Trust to defeat the collection of his tax liabilities.

Plaintiff's Motion for Summary Judgment (doc. 22) is GRANTED. The Court enters summary judgment in favor of the United States with respect to Ronald R. Brice's 2001-2003 federal tax liabilities in the amount of $1,764,607.14, plus accruals after August 23, 2010. The Court also holds that Investment Trail Trust is the alter ego or nominee of Brice, and that the United States may foreclose on the tax liens against the Residence and Airplane Hangar. The Court orders that the Residence and Airplane Hangar be sold with the proceeds going to (1) the costs of sale; (2) the Stone County Treasurer for any unpaid local property taxes; and (3) the United States, in satisfaction of its tax liens.

**IT IS SO ORDERED.**

Date: March 30, 2012  /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT